```
1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF GEORGIA
2                         ATLANTA DIVISION

3

4

5    UNITED STATES OF AMERICA )
                              )
6               PLAINTIFF,  )
                              )          CRIMINAL ACTION
7          VS.              )          FILE NO. 1:13-CR-266-TCB
                              )
8                              )          ATLANTA, GEORGIA
     KEVIN HICKEY             )          MARCH 25, 2014
9                              )          10:00 A.M.
                DEFENDANT.  )
10   _____)

11

12

13             TRANSCRIPT OF SENTENCING HEARING
           BEFORE THE HONORABLE TIMOTHY C. BATTEN, SR.
14                UNITED STATES DISTRICT JUDGE

15

16

17   APPEARANCES:

18       FOR THE GOVERNMENT:        JILL STEINBERG
                                    ASSISTANT U.S. ATTORNEY
19
         FOR THE DEFENDANT:         AKIL SECRET
20                                  ATTORNEY AT LAW

21

22

23   LORI BURGESS, OFFICIAL COURT REPORTER
     (404) 215-1528

24   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY CAT.

25
```

1              THE COURT:  GOOD MORNING.  MR. HICKEY, HAVE YOU
2    READ THE PRESENTENCE REPORT?
3              THE DEFENDANT:  YES, SIR.
4              THE COURT:  WE HAVE BUT ONE OBJECTION TO THE
5    REPORT, AND IT'S APPLICATION OF THE SPECIFIC OFFENSE
6    CHARACTERISTICS.  WE START WITH A BASE OFFENSE LEVEL OF 22,
7    AND THEN WE INCREASE THAT BY TWO LEVELS BECAUSE THE MATERIAL
8    INVOLVED A PREPUBESCENT MINOR OR A MINOR WHO HAD NOT
9    OBTAINED THE AGE OF 12 YEARS.  AND THIS OBJECTION NOW IS
10   WITH RESPECT TO PARAGRAPH 24 OF THE PSR, WHICH RAISES THE
11   ISSUE OF WHETHER WE SHOULD INCLUDE THE OFFENSE LEVEL BY FIVE
12   MORE LEVELS BECAUSE THE OFFENSE INVOLVED DISTRIBUTION FOR
13   THE RECEIPT OR EXPECTATION OF RECEIPT OF A THING OF VALUE.
14             THE DEFENDANT CONTENDS THAT HE DID NOT SHARE
15   IMAGES WITH ANYONE ELSE WITH AN AGREEMENT TO RECEIVE
16   ANYTHING OF VALUE IN RETURN.  SO I WOULD LIKE TO HEAR THE
17   GOVERNMENT'S RESPONSE TO THAT.
18             MS. STEINBERG:  YES, YOUR HONOR.  I DON'T THINK
19   ANYONE IS CONTESTING THAT IF MR. HICKEY DID IN FACT TRADE
20   WITH ANOTHER PERSON THEN THAT WOULD CONSTITUTE RECEIVING
21   SOMETHING OF VALUE.  CHILD PORNOGRAPHY IS SOMETHING OF VALUE
22   THAT HE WOULD HAVE IN FACT RECEIVED.  THE ACTIVITY IN JUNE
23   OF 2013 REFLECTS THE DEFENDANT ACTUALLY DISTRIBUTING JUST
24   GENERALLY TO THE CONFIDENTIAL SOURCE.  SO THE QUESTION IS
25   WHETHER OR NOT HE HAD AN EXPECTATION HE WOULD GET SOMETHING

1    IN RETURN.  CERTAINLY THAT IS SOMETHING THE COURT COULD

2    INFER, BUT IT DOESN'T EVEN NEED TO DO THAT BECAUSE, IF THE

3    COURT LOOKS AT THE FACTUAL STATEMENTS IN PARAGRAPHS NO. 18

4    AND 19, WHICH ARE NOT DISPUTED, IT TALKS ABOUT TWO OTHER

5    INSTANCES IN WHICH THE DEFENDANT WAS TRADING WITH

6    INDIVIDUALS.

7              PARAGRAPH 18 TALKS ABOUT THE DEFENDANT TRADING

8    WITH SOMEONE BY THE NAME OF NATE, WHERE NATE CAME OVER TO

9    THE DEFENDANT'S HOUSE AND LOOKED AT CHILD PORNOGRAPHY AND

10   LEFT A HARD DRIVE THERE THAT CONTAINED CHILD PORNOGRAPHY

11   THERE ON IT.  THAT IS AN EXCHANGE.

12             AND EVEN IF THE COURT WERE NOT TO CHARACTERIZE

13   THAT AS TRADING CHILD PORNOGRAPHY, SOMEONE COMING OVER AND

14   LOOKING AT THE DEFENDANT'S PORNOGRAPHY, LEAVING SOMETHING

15   FOR THE DEFENDANT, IT IS STATED VERY DIRECTLY IN PARAGRAPH

16   NO. 19 WHICH RELATES TO AN INDIVIDUAL THAT THE DEFENDANT

17   KNEW AS ALAN FRANCO, AND THE DEFENDANT INDICATED THAT HE

18   TRADED CHILD PORNOGRAPHY WITH THAT INDIVIDUAL.

19             SO THERE ARE THREE SEPARATE OCCASIONS IN WHICH THE

20   COURT COULD BASE THE FIVE-LEVEL ENHANCEMENT, THE MOST

21   OBVIOUS ONE IS REALLY CHARACTERIZED IN PARAGRAPH 19.  I

22   THINK 18 FITS THE BILL PRETTY CLEARLY AS WELL.  AND FOR THAT

23   REASON, I THINK THE FIVE-LEVEL ENHANCEMENT IS APPROPRIATE.

24   AT THE VERY LEAST, IT WOULD NEED TO BE A TWO-LEVEL

25   ENHANCEMENT FOR DISTRIBUTION.

1          THE COURT:  ALL RIGHT, MR. SECRET, WHY IS SHE NOT

2    CORRECT?

3          MR. SECRET:  YOUR HONOR, I BELIEVE THAT BOTH THE

4    GUIDELINE AND THE CASE LAW INDICATES NOT ONLY THAT TRADING

5    OR THE EXCHANGING OF CHILD PORNOGRAPHY IN AND OF ITSELF IS

6    NOT SUFFICIENT.  IN THE GENERAL CHILD PORNOGRAPHY COMMUNITY,

7    I THINK THIS IS POINTED OUT IN SOME OF THE CASES, THERE ARE

8    THESE IMAGES THAT ARE GOING BACK AND FORTH.  BUT I THINK

9    THAT THERE HAS TO BE SOME SPECIFIC INTENT ON HIS PART TO

10   TRADE WITH THE EXPECTATION THAT HE IS GOING TO GET SOMETHING

11   IN RETURN.  I THINK THAT'S WHAT THE DIFFERENCE IS HERE.

12         THE COURT:  WHY ISN'T THAT NOT READILY INFERRED

13   FROM PARAGRAPHS 18 AND 19?

14         MR. SECRET:  I DON'T THINK IT IS INFERRED FROM THE

15   EVIDENCE.  I WHAT IS INFERRED FROM THE EVIDENCE IS THAT

16   THERE WAS PORNOGRAPHY GIVEN AND THERE WAS PORNOGRAPHY

17   RECEIVED BY SOMEONE ELSE, BUT THERE IS NEVER AN INFERENCE

18   THAT I SEE THAT THIS IS DONE FOR THE SPECIFIC PURPOSE OF

19   THAT.

20         LET ME GIVE THIS EXAMPLE:  ONE OF THE THINGS IN

21   ONE OF THE OTHER SECTIONS OF THE GUIDELINES IS IF YOU

22   RECEIVE SOME MONETARY, SOME PECUNIARY VALUE, I AM SELLING

23   THIS, SOMEBODY COMES TO MY HOUSE, THEY PUT MONEY ON THE

24   TABLE, AND THEN IN EXCHANGE FOR THAT I GIVE THEM CHILD

25   PORNOGRAPHY.  AND IN THIS INSTANCE, IN THE CHILD PORNOGRAPHY

1    COMMUNITY, I THINK IT'S INFERRED ONLY THAT CHILD PORNOGRAPHY

2    IS EXCHANGED.  NOT NECESSARILY BARTERING, NOT FOR THAT

3    PURPOSE.  IN SOME INSTANCES HE GAVE IT TO THE INFORMANT

4    WITHOUT RECEIVING ANYTHING IN RETURN ON A COUPLE OF

5    OCCASIONS.

6              I THINK YOU COULD INFER THAT, JUDGE, BUT I DON'T

7    THINK IT IS A NATURAL CONSEQUENCE OF THE FACTS OF THIS CASE.

8    SOMEONE CAME TO HIS HOUSE, HE HAD CHILD PORNOGRAPHY, THEY

9    BROUGHT HIM SOME, HE GAVE THEM SOME.  BUT NOT WITH THE --

10   HERE IS WHAT I AM SAYING TO THE COURT.  I THINK THE QUESTION

11   IS WHETHER OR NOT BUT FOR THIS OTHER INDIVIDUAL GIVING HIM

12   THAT PORNOGRAPHY, THAT HE WOULD NOT HAVE GIVEN HIM WHAT HE

13   HAD TO DISTRIBUTE.  AND I DON'T THINK THERE IS ANY INFERENCE

14   IN THE CASE ABOUT THAT.

15             THE COURT:  I DON'T THINK IT IS A BUT FOR TEST.  I

16   THINK IT'S SIMPLY DID HE DO IT WITH AN EXPECTATION OF

17   GETTING PORNOGRAPHY IN EXCHANGE.  AND I THINK THAT HE DID.

18   I THINK THE EVIDENCE SHOWS THAT THE GOVERNMENT HAS CARRIED

19   ITS BURDEN OF SHOWING BY A PREPONDERANCE OF THE EVIDENCE

20   THAT THAT SPECIFIC OFFENSE CHARACTERISTIC APPLIES, SO I AM

21   GOING TO OVERRULE THE DEFENDANT'S OBJECTION.

22             MR. SECRET:  ALL RIGHT.

23             THE COURT:  WITH THAT, WE ADD FIVE LEVELS WHICH

24   BRINGS US TO 29.  AND THEN WE INCREASE BY FOUR LEVELS

25   BECAUSE THE OFFENSE INVOLVED MATERIAL THAT PORTRAYED

1    SADISTIC OR MASOCHISTIC CONDUCT OR OTHER DEPICTIONS OF

2    VIOLENCE, THAT BRINGS US TO 33.  AND THEN TWO LEVELS ARE

3    ADDED BECAUSE THE OFFENSE INVOLVED THE USE OF A COMPUTER.

4    THAT BRINGS US TO 35.  AND THEN FIVE LEVELS ARE ADDED

5    BECAUSE THE OFFENSE INVOLVED 600 OR MORE IMAGES.  THAT

6    BRINGS US TO 40.  THE DEFENDANT HAS ACCEPTED RESPONSIBILITY

7    AND THEREFORE GETS A THREE-LEVEL REDUCTION, AND IT PUTS HIM

8    AT 37.

9           HE IS IN CRIMINAL HISTORY CATEGORY 1, AND A PERSON

10   IN CRIMINAL HISTORY CATEGORY 1 AND OFFENSE LEVEL OVER 37 HAS

11   A CUSTODY GUIDELINE RANGE OF 210 TO 262 MONTHS, AND A FINE

12   GUIDELINE RANGE OF 20,000 TO $200,000.  COUNSEL, BASED ON MY

13   RULING TODAY, AND WITHOUT HAVING YET ADDRESSED THE

14   GOVERNMENT'S MOTION FOR A SENTENCING REDUCTION, DO YOU AGREE

15   THAT THE COURT HAS CORRECTLY COMPUTED THE GUIDELINE RANGES

16   IN THIS CASE?

17          MR. SECRET:  BASED UPON YOUR RULING, YES JUDGE.

18          MS. STEINBERG:  YES, SIR.

19          THE COURT:  OKAY.  NOW, WE TURN TO THE

20   GOVERNMENT'S MOTION FOR A SENTENCE REDUCTION PURSUANT TO

21   SECTION 5 K 1.1 OF THE GUIDELINES.  THE GOVERNMENT'S ASKING

22   FOR A THREE-LEVEL REDUCTION.  I HAVE READ THE GOVERNMENT'S

23   MOTION, AND I AM SATISFIED THAT MR. HICKEY HAS PROVIDED

24   SUBSTANTIAL ASSISTANCE INDEED TO THE GOVERNMENT.  THAT

25   MERITS THIS TYPE OF A DEPARTURE, AND THEREFORE I AM GOING TO

1   GRANT THE MOTION.  AND SO IF WE GRANT THE MOTION, THE

2   DEFENDANT WILL GO FROM AN OFFENSE LEVEL OF 37 TO AN OFFENSE

3   LEVEL OF 34.  AND BEING IN CATEGORY 1 THAT REDUCES HIS

4   CUSTODY GUIDELINE RANGE TO 151 TO 188 MONTHS, AND HIS FINE

5   GUIDELINE RANGE FROM $17,500 TO $175,000.  AM I CORRECT

6   ABOUT THAT, COUNSEL?

7           MR. SECRET:  YES, YOUR HONOR.

8           MS. STEINBERG:  YES, YOUR HONOR.

9           THE COURT:  ALL RIGHT.  I WILL HEAR FROM THE

10  GOVERNMENT AS TO WHAT THE SENTENCE SHOULD BE.

11          MS. STEINBERG:  YOUR HONOR, AS INDICATED AT THE

12  CONCLUSION OF THE GOVERNMENT'S 5 K MOTION, THE GOVERNMENT

13  ANTICIPATED AT THAT TIME, AND IT WILL IN FACT RESULT TODAY

14  IN A VARIANCE BELOW THE GUIDELINE RANGE THAT RESULTS FROM

15  THE 34 CRIMINAL HISTORY CATEGORY 1 CALCULATION THAT THE

16  COURT JUST MADE OF 151 TO 188 MONTHS.

17          THE REASON FOR THAT IS, TO A CERTAIN EXTENT,

18  DISCUSSED IN MR. SECRET'S SENTENCING MEMORANDUM ABOUT THE

19  WAY THE GUIDELINES FUNCTION AND THE CURRENT GUIDELINES'S

20  ABILITY DISTINGUISH DEFENDANTS FROM ONE ANOTHER IN THESE

21  TYPE OF CASES.  THAT IS NOT THE SAY THAT ALL OF THE

22  ENHANCEMENTS ARE INVALID OR THEY ARE INVALID IN SOME

23  CIRCUMSTANCES AND NOT IN OTHERS, BUT I THINK THE JUSTICE

24  DEPARTMENT AND OUR OFFICE HAS AGREED FOR SOME TIME THAT THE

25  GUIDELINES DON'T DO A GREAT JOB OF DISTINGUISHING PEOPLE IN

1    THESE TYPE OF CATEGORIES.

2            MR. HICKEY IS SOMEBODY WHO IS ATYPICAL IN CERTAIN

3    REGARDS AND TYPICAL IN OTHER RESPECTS WHEN IT COMES TO THESE

4    TYPE OF OFFENDERS.  AND IN LOOKING AT ALL OF THE THINGS THAT

5    RELATE TO HIS PARTICULAR CASE, AND AN HIM AS AN INDIVIDUAL,

6    IT IS OUR JUDGMENT THAT A REASONABLE SENTENCE IS 120 MONTHS,

7    WHICH IS BELOW THE 151 MONTHS.  THERE ARE A COUPLE OF

8    DIFFERENT REASONS FOR THAT.

9            ON THE POSITIVE SIDE FOR MR. HICKEY IS -- THERE

10   OBVIOUSLY IS A REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.

11   THAT IS SOMETHING THAT THIS COURT TYPICALLY FINDS IN GUILTY

12   PLEA TYPE OF SCENARIOS.  MR. HICKEY, I WOULD SAY, WENT

13   ALMOST ABOVE AND BEYOND THAT.  HE IMMEDIATELY ACCEPTED

14   RESPONSIBILITY FOR WHAT HE DID.  THE DAY THAT THE SEARCH

15   WARRANT WAS EXECUTED AND EVERY MOMENT SINCE THEN HAS

16   COOPERATED WITH THE GOVERNMENT.  AND THAT IS SOMETHING THAT

17   IS REFLECTED IN THE 5 K MOTION, IT IS REFLECTED IN THE

18   ACCEPTANCE PART, BUT EVEN BEYOND PEOPLE WHO FALL INTO THOSE

19   BUCKETS, I THINK MR. HICKEY'S ACCEPTANCE AND COOPERATION

20   WITH THE GOVERNMENT IS BEYOND WHAT WE EVEN SEE IN THE NORM.

21           HE HAS REPEATEDLY OFFERED TO BE OF GREATER

22   ASSISTANCE TO THE GOVERNMENT TO THE EXTENT THAT WE WOULD

23   NEED THAT, AND THAT MIGHT VERY WELL HAPPEN IN THE FUTURE, WE

24   WILL SEE.  BUT THAT IS SOMETHING THAT STICKS OUT ABOUT

25   MR. HICKEY.

1          ON THE NEGATIVE SIDE OF IT, MR. HICKEY IS SOMEBODY
2    WHO OVER TIME HAS SHOWN EXTREMELY POOR JUDGMENT IN TERMS OF
3    HOW TO DEAL WITH OBVIOUSLY AN INAPPROPRIATE SEXUAL INTEREST
4    TOWARDS CHILDREN AND HOW IT IS HE GOES ABOUT LIVING HIS
5    LIFE.  HE WAS A TEACHER IN HIGH SCHOOL, HE WAS A YOUTH
6    DIRECTOR IN A CATHOLIC CHURCH.  HE THEN JOINED THIS
7    ORGANIZATION LIFE TEAM WHERE HE HAD SOME CONTACT WITH
8    CHILDREN AND WAS DOING PARISH OUTREACH.
9          THIS IS NOT SOMETHING COMPATIBLE WITH THE ISSUES
10   MR. HICKEY IS DEALING WITH.  IT IS SORT OF REPEATEDLY
11   EXPOSING HIMSELF TO SOMETHING THAT IS KIND OF A TOXIC
12   ENVIRONMENT FOR HIM, IT SHOWS BAD JUDGEMENT ON HIS PART.
13         HE ALSO HAS A PRIOR, I DON'T KNOW IF IT'S A
14   CONVICTION, BUT INTERACTION WITH LAW ENFORCEMENT FOR PUBLIC
15   LEWDNESS WHICH DEMONSTRATES AGAIN SORT OF A LACK OF JUDGMENT
16   AND INABILITY TO CONTROL SOME OF THESE BEHAVIORS THAT NEED
17   TO BE CORRECTED.
18         HE IS AN ACTIVE DISTRIBUTOR OF CHILD PORNOGRAPHY.
19   WE HAVE INDIVIDUALS WHO ARE HERE IN PEER-TO-PEER TYPE CASES
20   WHO IT IS MORE OF A PASSIVE ACTIVITY.  THIS IS SOMEONE WHO
21   HAS TAKEN THAT STEP OF ACTUALLY GOING OUT AN INTERACTING
22   WITH OTHER PEOPLE WITH SIMILAR INTERESTS, AND ACTIVELY
23   TRADING CHILD PORNOGRAPHY, AND THAT IS SOMETHING THAT I KNOW
24   MR. SECRET TALKS ABOUT THE GUIDELINES AND HOW THEY SORT OF
25   DECONSTRUCTED AND INDICTED BY VARIOUS PARTIES, ONE OF THE

1   THINGS THAT MOST OF THE STAKEHOLDERS AGREE ON IS THAT WHEN

2   SOMEONE REACHES THE LEVEL OVER MR. HICKEY, BEING THEY ARE

3   ACTIVE DISTRIBUTORS, THEY ARE INTERACTING WITH PEOPLE OF

4   LIKE MINDS, THAT TAKES THEM OUT OF THE REALM OF THE PERSON

5   SITTING IN THEIR MOTHER'S BASEMENT, YOU KNOW.  THEY HAVE

6   TAKEN THAT EXTRA STEP.

7           MR. HICKEY HAS TAKEN THAT EXTRA STEP.  IT PUTS HIM

8   ACTUALLY IN AN ENHANCED KIND OF CATEGORY.  SO ALTHOUGH SOME

9   OF THE INDICTMENT OF THE GUIDELINES, SOME OF THE THINGS THAT

10  MR. SECRET IS TALKING ABOUT ARE TRUE, A LOT OF THAT STUFF

11  DOES NOT GO TO SOMEBODY WHO IS IN HIS CLIENT'S POSITION.

12  BECAUSE THE GUIDELINES IN SOME WAYS DON'T DEAL WELL WITH

13  THESE KIND OF OFFENDERS, BUT THEY ALSO DON'T DEAL WELL WITH

14  OFFENDERS WHO HAVE TAKEN THAT EXTRA STEP BECAUSE THEY DON'T

15  DISTINGUISH PEOPLE WHO ARE NECESSARILY EMAILING AND TEXTING

16  AND MEETING IN PERSON WITH PEOPLE OF LIKE MINDS AND DOING

17  THIS KIND OF ACTIVE TRADING.

18          THE GUIDELINES DON'T DEAL WITH SOMEONE LIKE

19  MR. HICKEY WHO GOES OUT IN PUBLIC IN THE ATLANTA METRO AREA

20  AND IS TAKING PICTURES OF CHILDREN AND THEN SENDING THEM TO

21  OTHER PEOPLE.  THE GUIDELINES DON'T TALK ABOUT THAT.  SO THE

22  GUIDELINES DON'T ALWAYS GO A GREAT JOB, BUT IT DOESN'T

23  NECESSARILY HELP HIM IN THIS CASE.

24          NEVERTHELESS, IT'S OUR POSITION THAT A GUIDELINE

25  SENTENCE MIGHT STILL BE SLIGHTLY ABOVE WHAT REASONABLE

1    SENTENCES IN MR. HICKEY'S CASE, AND FOR THAT REASON WE STILL

2    THINK IS A SUBSTANTIAL SENTENCE IS WARRANTED FOR THE REASONS

3    THAT I JUST DISCUSSED, AND THAT WOULD BE THE SENTENCE OF 120

4    MONTHS, AND A PERIOD OF SUPERVISED RELEASE OF AT LEAST 20

5    YEARS FOLLOWING THAT.

6              THERE IS ALSO A RESTITUTION REQUEST THAT HAS BEEN

7    MADE BY ONE OF THE VICTIMS IN THE J_BLONDE SERIES.  I HAVE

8    SPOKEN TO THE LAWYER WHO REPRESENTS THE J_BLONDE SERIES AND

9    MR. SECRET, AND WE HAVE COME TO AN AGREEMENT FOR $1,000.  SO

10   I WOULD ASK THAT THE $1,000 RESTITUTION AMOUNT BE INCLUDED

11   IN THE JUDGMENT.

12             THE COURT:  ALL RIGHT.  MR. SECRET?

13             MR. SECRET:  YOUR HONOR, MAY IT PLEASE THE COURT,

14   I KNOW THAT YOU ARE FAMILIAR WITH THIS ARGUMENT.  IN FACT, I

15   THINK IT WAS BRIAN MENDELSOHN WHO PRESENTED THIS ARGUMENT TO

16   YOUR HONOR PROBABLY SOMETIME IN THE BEGINNING OF THE YEAR,

17   AND I GUESS I LOOKED AT YOUR HONOR'S RULING IN THAT MATTER,

18   SO --

19             THE COURT:  I DON'T KNOW IF IT WAS REFLECTED IN

20   THE TRANSCRIPT OR IN WHATEVER YOU LOOKED AT, BUT I THINK IT

21   IS A VERY COGENT ARGUMENT.  IT DOESN'T CARRY THE WATER FOR

22   ME IN EVERY RESPECT, BUT IT IS A WORTHWHILE ARGUMENT.

23             MR. SECRET:  AND I JUST WANTED TO HIGHLIGHT JUST A

24   COUPLE OF THINGS ABOUT THAT ARGUMENT, YOUR HONOR.  IT RAISES

25   THE QUESTION OF WHETHER OR NOT THE AVERAGE DEFENDANT SHOULD

1   ALWAYS BE VARIED NEAR THE TOP OF THE GUIDELINES.  NOW, OF

2   COURSE WE ARE TALKING ABOUT 3553, AND I REALIZE WHAT THE

3   GOVERNMENT'S RECOMMENDATION IS, AND I AM CERTAIN MR. HICKEY

4   APPRECIATES THAT.

5           BUT OTHER THAN THEIR VARIANCE THAT THEY ARE

6   SUGGESTING, THE GUIDELINES AS STATED, GENERALLY PUT, MOST

7   PEOPLE IN MR. HICKEY'S SITUATION AT THE MAXIMUM LEVEL, AND

8   THE QUESTION BECOMES WHETHER OR NOT THAT IS REASONABLE.  THE

9   LACK OF EMPIRICAL DATA THAT THE SENTENCE COMMISSION HAS USED

10  TO ARRIVE AT THIS, IT SEEMS TO HAVE BEEN RATHER IMPOSED SORT

11  OF EXTERNALLY BY STATUTE.

12          BUT LATELY THE SENTENCING COMMISSION HAS CONFIRMED

13  THAT WILL HAS BEEN A LACK OF EMPIRICAL DATA, AND THAT THEY

14  EVEN NOW SUGGEST THAT THERE BE SOME CHANGES IN THE

15  SENTENCING GUIDELINES.

16          AND THEN THERE IS THE COMPUTER ENHANCEMENT, WHICH

17  ALWAYS SEEMS TO BE NOT A GIVEN IN CHILD PORNOGRAPHY CASES,

18  BECAUSE THAT IS THE I WOULD SAY, IN PROBABLY 99 PERCENT OF

19  THE CASES, THE MANNER IN WHICH --

20          THE COURT:  IS IT THAT LOW?

21          MR. SECRET:  -- IN WHICH ALL CHILD PORNOGRAPHY IS

22  TRANSMITTED.  AND THEN, YOU KNOW, THAT OBVIOUSLY THAT FORM

23  OF TRANSMISSION MAKES IT SO EASY TO TRANSMIT A NUMBER OF

24  DOCUMENTS WITHIN A VERY SHORT PERIOD OF TIME

25          THE COURT:  THE PROBLEM YOUR GUY HAS IS

1    DISTRIBUTION.

2         MR. SECRET:  I UNDERSTAND.  SO THERE IS AN

3    EMERGING CONSENSUS, AND I THINK THERE IS A CASE WHERE THE

4    11TH CIRCUIT TALKS ABOUT THAT, A CASE THAT THEY DECIDED

5    WHERE THEY WERE SORT OF GOING AGAINST THE -- WELL, I THINK

6    THE QUESTION IS TO WHAT LEVEL THIS -- LET ME SEE WHAT I'VE

7    GOT HERE -- WHETHER OR NOT THE DISPARITIES IN THIS CASE

8    ARISE TO THE *KIMBREL* LEVEL.

9         AND AT THAT POINT, WHEN THE 11TH CIRCUIT MADE THIS

10   DECISION, AND I THINK IT WAS IN THE *PEW* CASE, THE SENTENCING

11   COMMISSION HAD NOT SPOKEN ON IT, BUT THAT IS NO LONGER THE

12   CASE.  THE SENTENCING COMMISSION HAS SPOKEN ON THE CASE AND

13   THERE HAVE BEEN HEARINGS AND FINDINGS BY THE COMMISSION THAT

14   THEY BELIEVE THERE IS A DISPARITY IN SENTENCING WITH RESPECT

15   TO CHILD PORNOGRAPHY.

16        I AM ASKING THE COURT IN THIS CASE TO, BASED UPON

17   HIS HISTORY, I THINK THE COURT HAS SOME LETTERS OF REFERENCE

18   FOR HIM.  HE HAS ALWAYS BEEN GAINFULLY EMPLOYED.  OBVIOUSLY

19   ON THE TERMS AND CONDITIONS OF THE COURT'S SUPERVISED

20   RELEASE, THE COURT CAN CERTAINLY DICTATE THE KIND OF

21   EMPLOYMENT THAT HE CAN AND CANNOT HAVE, CAN CERTAINLY ASSIST

22   HIM WITH STRUCTURE AND GUIDE HIM IN THE DIRECTION WHERE THE

23   KIND OF CONCERNS THAT THE GOVERNMENT HAS WITH RESPECT TO HIS

24   JUDGMENT, HE DOESN'T HAVE ANY CHOICE OR FLEXIBILITY IN THAT

25   MATTER.

1              I'VE ASKED THE COURT FOR A SENTENCING OF 60

2     MONTHS.  I THINK THE GOVERNMENT HAS ASKED FOR 120 MONTHS.  I

3     THINK A SENTENCE SOMEWHERE IN THE MIDDLE RANGE.  THE 160

4     MONTHS I BELIEVE IS THE HIGH END OF A LEVEL 32, AND I WOULD

5     ASK THE COURT TO CONSIDER THE HIGH END OF A LEVEL 30, WHICH

6     WOULD BE I BELIEVE A 97 MONTHS IN THIS CASE AS A SENTENCE IN

7     THIS CASE.

8              THE COURT:  ALL RIGHT.  DOES YOUR CLIENT WISH TO

9     MAKE A STATEMENT?

10             MR. SECRET:  YES, JUDGE.  HE DOES.

11             THE COURT:  THAT IS FINE.  RIGHT THERE IS FINE.

12             THE DEFENDANT:  THANK YOU FOR LETTING ME HAVE AN

13    OPPORTUNITY.  AND I DO WANT TO FIRST START BY JUST

14    APOLOGIZING TO THE COURT, TO YOU, TO THE U.S. ATTORNEY FOR

15    MY ACTIONS.  I DO ACCEPT RESPONSIBILITY FOR WHAT I'VE DONE

16    AND ACKNOWLEDGE.  YOU KNOW, IT WAS WRONG.  I ACKNOWLEDGE

17    THAT.  I APOLOGIZE TO THE COMMUNITY, WHETHER IT BE THE CITY

18    OF ATLANTA OR THE GREATER COMMUNITY, YOU KNOW, THAT WE ARE

19    IN THE WORLD NOW.  IT IS JUST EVERYBODY IS SO CONNECTED.

20             AND I APOLOGIZE TO THE FAMILIES AND THE INNOCENT

21    VICTIMS OF THE CHILD PORNOGRAPHY.  THOSE CHILDREN WHO ARE --

22    THEY ARE VICTIMS.  AND SO I APOLOGIZE TO THEM.  AND IN THAT

23    RESTITUTION, THAT WAY OF -- AN OUTWARD EXPRESSION OF THAT AS

24    WELL, OF SHOWING MY ACKNOWLEDGEMENT THAT IT'S NOT JUST ABOUT

25    SAYING I AM SORRY, BUT THAT THERE HAS TO BE A CHANGE IN

1    BEHAVIOR, THERE HAS TO BE A CHANGE IN LIFESTYLE.  IT

2    CAN'T -- THINGS CAN'T JUST STAY THE SAME.

3           AND I WOULD ALSO LIKE TO PUBLICLY APOLOGIZE TO MY

4    FAMILY FOR THE STRAIN AND THE STRESS THAT IT'S PUT ON THEM.

5    AND TO ACKNOWLEDGE -- I HAVE AMAZING FRIENDS AND FAMILY WHO

6    HAVE BEEN SUPPORTIVE AND WILL CONTINUE TO SUPPORT ME THROUGH

7    INCARCERATION, THROUGH SUPERVISED RELEASE, ALL OF THOSE TYPE

8    OF THINGS.  I WILL RELY UPON MY FAMILY, MY FAITH COMMUNITY,

9    AND ALL OF THAT TO CHANGE BEHAVIOR.

10          AGAIN, I BELIEVE IT'S NOT JUST ABOUT SAYING I AM

11   SORRY AND THEN NOT CHANGING ANYTHING.  SOMETHING HAS TO

12   CHANGE, AND I AM WILLING TO MAKE THOSE CHANGES.  I FEEL I

13   HAVE, LIKE I SAID, A FAMILIAL AND A COMMUNITY, FAITH

14   COMMUNITY, SUPPORT SYSTEM THAT WILL HELP ME MAKE THOSE

15   NECESSARY CHANGES AND TO CONTINUE TO LIVE OUT, YOU KNOW,

16   HOPEFULLY THE REST OF MY DAYS IN A WAY THAT WILL SHOW THAT,

17   YOU KNOW, ACCEPTING THAT RESPONSIBILITY AND THEN DOING WHAT

18   IS NECESSARY TO NOT GET INVOLVED IN THOSE BEHAVIORS AGAIN.

19          I DO DESIRE TO BE A PRODUCTIVE AND CONTRIBUTING

20   MEMBER OF SOCIETY.  I DON'T FEEL, YOU KNOW, I WILL HAVE TO

21   RELY UPON JUST WHOA IS ME TYPE OF ATTITUDE, BUT THAT FROM

22   HERE ON OUT, AGAIN, MAKING THOSE NECESSARY CHANGES, WHETHER

23   IT BE THROUGH EDUCATION THAT I NEED TO GO THROUGH,

24   COUNSELING AND SO ON AND SO FORTH, TO DO WHAT IS NECESSARY

25   TO CHANGE.

```
 1              THE COURT:  ALL RIGHT.

 2              THE DEFENDANT:  THANK YOU.

 3              THE COURT:  THANK YOU.  KEVIN, I SEE IN THE

 4     SENTENCING RECOMMENDATION IT INDICATES A $10,000 RESTITUTION

 5     PAYMENT.  IS IT 10,000 OR 1,000?

 6              THE PROBATION OFFICER:  10,000 WAS WHAT THE VICTIM

 7     WAS ORIGINALLY ASKING FOR, BUT MY UNDERSTANDING IS THAT

 8     MS. STEINBERG HAS SPOKEN TO THE ATTORNEY AND --

 9              THE COURT:  ESSENTIALLY IT'S BEEN RENEGOTIATED?

10     ALL RIGHT.

11              THE PROBATION OFFICER:  THAT WAS BEFORE THAT WAS

12     NEGOTIATED.

13              THE COURT:  ALL RIGHT.  THANK YOU.  PURSUANT TO

14     THE SENTENCING REFORM ACT OF 1984 IT IS THE JUDGMENT OF THE

15     COURT THAT YOU THE GOVERNMENT HAS THE POSITION CORRECT.  I

16     THINK 120 MONTHS IS APPROPRIATE.  AND THAT IS GOING TO BE

17     THE SENTENCE FOR THE DEFENDANT TO BE COMMITTED TO THE

18     CUSTODY OF THE BUREAU OF PRISONS FOR THAT MATERIAL.  HE

19     SHALL PAY A SPECIAL ASSESSMENT OF $100, AND THE COURT WILL

20     WAIVE THE FINE AND COST OF INCARCERATION.

21              THE DEFENDANT IS ORDERED TO MAKE A RESTITUTION

22     PAYMENT TO CAPITAL J UNDERSCORE LOWER CASE B-L-O-N-D-E IN

23     THE AMOUNT OF $10,000.  THE DEFENDANT SHALL MAKE RESTITUTION

24     PAYMENTS FROM ANY WAGES HE MAY EARN IN PRISON, AND ANY

25     PORTION OF THE RESTITUTION THAT IS NOT PAID IN FULL AT THE
```

1    TIME OF HIS RELEASE FROM IMPRISONMENT SHALL BECOME A

2    CONDITION OF SUPERVISION AND BE PAID AT THE MONTHLY RATE OF

3    AT LEAST $150 DOLLARS PLUS 25 PERCENT OF THE DEFENDANT'S

4    GROSS INCOME IN EXCESS OF $2300 PER MONTH.

5              I WILL PLACE THE DEFENDANT ON SUPERVISED RELEASE

6    FOR THE REMAINDER OF HIS LIFE.  HE IS TO REPORT TO THE

7    PROBATION OFFICE WITHIN 72 HOURS OF HIS RELEASE, AND WHILE

8    ON SUPERVISED RELEASE HE SHALL NOT COMMIT ANOTHER CRIME, AND

9    SHALL COMPLY WITH THE STANDARD CONDITIONS OF SUPERVISION AND

10   THE FOLLOWING SPECIAL CONDITIONS:

11             HE SHALL SUBMIT TO ONE DRUG URINALYSIS WITHIN 15

12   DAYS OF BEING PLACED ON SUPERVISION, AND AT LEAST TWO

13   PERIODIC TESTS THEREAFTER.  HE SHALL COOPERATE IN THE

14   COLLECTION OF DNA AS DIRECTED BY THE PROBATION OFFICER.  HE

15   SHALL NOT OWN, POSSESS, OR CONTROL ANY FIREARM, DANGEROUS

16   WEAPON, OR OTHER DESTRUCTIVE DEVICE.  HE SHALL SUBMIT TO A

17   SEARCH OF HIS PERSON, PROPERTY, OR RESIDENCE, AND WARN OTHER

18   RESIDENTS THAT THE PREMISES MAY BE SEARCHED.

19             HE SHALL PARTICIPATE IN A DRUG AND ALCOHOL

20   TREATMENT PROGRAM.  HE SHALL PARTICIPATE IN THE SEX OFFENDER

21   TREATMENT PROGRAM.  AND HE SHALL NOT HAVE ACCESS OR HAVE

22   ACCESS TO THE INTERNET OR ANY OTHER FUTURE DEVELOPED

23   INTERNET-LIKE ELECTRONIC OR TECHNOLOGICAL MEANS OF ACCESSING

24   INFORMATION USING A COMPUTER OR OTHER DEVICE OR MEANS EXCEPT

25   AS MAY BE ALLOWED AND ONLY UNDER THE SUPERVISION AND

1    CONDITIONS THAT ARE PRESCRIBED BY THE PROBATION OFFICER.

2              THE DEFENDANT SHALL, AT THE REQUEST OF THE

3    PROBATION OFFICER, GRANT THE PROBATION OFFICER ACCESS TO ANY

4    COMPUTER OR FUTURE DEVELOPED, OTHER FUTURE DEVELOPED,

5    ELECTRONIC OR TECHNOLOGICAL DEVICE THAT THE DEFENDANT OWNS,

6    CONTROLS, OR USES, OR THAT IS CAPABLE OF ACCESSING THE

7    INTERNET, OR OTHER ELECTRONIC OR TECHNOLOGICAL MEANS OF

8    ACCESSING INFORMATION.  THE DEFENDANT SHALL REGISTER AS A

9    CONVICTED SEX OFFENDER AS REQUIRED BY LAW.

10             AND THE COURT WANTS THE RECORD TO REFLECT THAT THE

11   COURT HAS CAREFULLY CONSIDERED ALL OF THE SENTENCING FACTORS

12   SET FORTH IN TITLE 18 UNITED STATES CODE SECTION 3553(A) IN

13   ARRIVING AT THIS SENTENCE, AND THE COURT FEELS IT IS A JUST,

14   FAIR, AND REASONABLE SENTENCE UNDER ALL OF THE CIRCUMSTANCES

15   OF THE CASE.

16             THE CLERK:  DID YOU MEAN $1,000 RATHER THAN

17   10,000?

18             THE COURT:  I MEANT $1,000.  DID I SAY 10,000

19   AGAIN?  I MEANT A THOUSAND.

20             I WOULD AKIL, DOES YOUR CLIENT WANT ME TO

21   DESIGNATE HIM FOR HOUSTON

22             MR. SECRET:  TEXAS.  YES.

23             THE COURT:  AS CLOSE TO HOUSTON, I WOULD THINK,

24   FROM WHAT I KNOW.

25             MR. SECRET:  YES, SIR.  AND WE WOULD ASK FOR

1    VOLUNTARY SURRENDER, YOUR HONOR.

2           THE COURT:  NO OBJECTION BY THE GOVERNMENT TO

3    THAT, IS THERE?

4           MS. STEINBERG:  NO.

5           THE COURT:  HE WILL BE ALLOWED TO VOLUNTARILY

6    SURRENDER.  THAT IS FINE.  LET'S SEE, THE DEFENDANT HAS

7    WAIVED HIS APPEAL RIGHTS, BUT I WILL GO AHEAD AND STATE ON

8    THE RECORD TO THE EXTENT HE HAS ANY APPEAL RIGHTS REMAINING,

9    HE CAN ASSERT THOSE ONLY BY FILING A WRITTEN NOTICE OF

10   APPEAL IN OUR CLERK'S OFFICE WITHIN 14 DAYS OF THE ENTRY OF

11   JUDGMENT IN THE CASE, AND FAILING WHICH ANY APPEAL RIGHTS HE

12   HAS WILL BE FOREVER WAIVED.  DOES THE UNITED STATES TAKE

13   EXCEPTION TO THE SENTENCE?

14          MS. STEINBERG:  NO, SIR.

15          THE COURT:  DOES THE DEFENDANT TAKE EXCEPTION?

16          MR. SECRET:  NO, YOUR HONOR, OTHER THAN THOSE

17   PREVIOUSLY STATED.

18          THE COURT:  OKAY WE'LL BE IN RECESS.

19              (END OF HEARING AT 10:45 A.M.)

20                      * * * * *

21

22

23

24

25

REPORTER'S CERTIFICATION


     I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.



                              _____
                              LORI BURGESS
                              OFFICIAL COURT REPORTER
                              UNITED STATES DISTRICT COURT
                              NORTHERN DISTRICT OF GEORGIA

                              DATE:  DECEMBER 28, 2016